**MAINE STATE EMPLOYEES ASSOCIATION et al.**

v.

**STATE DEVELOPMENT OFFICE et al.**

Supreme Judicial Court of Maine.

Argued Sept. 11, 1985.

Decided Oct. 18, 1985.

Shawn C. Keenan, (orally) Augusta, for plaintiff.

Julie M. McKinley, (orally), Marc P. Ayotte, (orally), Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

On February 24, 1984, Maine State Employees Association (MSEA) filed with the Maine Labor Relations Board (the Board) a prohibited practices complaint against the State of Maine and the State Development Office (here jointly called the "State") alleging that the State had violated the State Employees Labor Relations Act (SELRA), 26 M.R.S.A. § 979–C(1)(A) and (1)(B),[1] by discharging an employee, Thomas Heels, because he had engaged in activity protected by SELRA. In its decision of July 6, 1984, the Board denied MSEA any relief, finding that there was no causal connection between Heels' discharge and any protected activity on his part. On February 25, 1985, the Superior Court (Kennebec County) affirmed the decision of the Board. On MSEA's appeal to this court, we affirm the judgment of the Superior Court.

I.

Thomas Heels was employed as a development representative by the State Development Office from February of 1978 until August of 1983. Heels was a professional employee serving as a contact person with business and industrial firms. His position was included in the State's Professional and Technical Services bargaining unit, and Heels was a member of MSEA. From 1980 to 1982, Leslie Stevens was Heels' immediate supervisor and responsible for Heels' performance evaluations. In Stevens' opinion, those evaluations showed "borderline" performance. In July 1982 Steven Bolduc became Heels' immediate supervisor when Stevens became the director of the State Development Office.

In the fall of 1982, Heels approached Stevens about reclassifying his job position to put it into a higher pay range. Heels told Stevens that he believed that a co-worker was being paid a higher salary for

---

1. 26 M.R.S.A. § 979–C(1)(A) and (1)(B) (1974) read in full as follows:

    **1. Public employer prohibitions.** The public employer, its representatives and agents are prohibited from:

    **A.** Interfering with, restraining or coercing employees in exercise of the rights guaranteed in section 979–B;

    **B.** Encouraging or discouraging membership in any employee organization by discrimination in regard to hire or tenure of employment or any term or condition of employment[.]

26 M.R.S.A. § 979–B (1974) reads in full as follows:

    No one shall directly or indirectly interfere with, intimidate, restrain, coerce or discriminate against state employees or a group of state employees in the free exercise of their rights, hereby given, voluntarily to join, form and participate in the activities of organizations of their own choosing for the purposes of representation and collective bargaining, or in the free exercise of any other right under this chapter.

performing similar duties. Stevens responded that it was none of Heels' business what a co-worker was making. After receiving no assistance from his supervisors, Heels filled out his own request for a reclassification. He submitted his written request to Stevens on January 4, 1983, but it was not forwarded to the personnel department until March 3, 1983. The personnel department granted the reclassification the following month.

On January 14, 1983, Bolduc gave Heels his annual performance review. Bolduc considered Heels' performance "satisfactory" or "near satisfactory" and recommended him for a merit increase. Stevens overrode Bolduc's recommendation, denying the merit increase and placing Heels on a 90-day reevaluation period. Stevens concluded that Bolduc's evaluation pointed to the same "borderline" situation that Stevens had found in Heels' three prior reviews, and that the time had come to show Heels that the issue was serious. Both Bolduc and Stevens believed that Heels was capable of doing a good job and hoped that his performance would improve over the reevaluation period. They told Heels that failure to improve could result in his termination. Dissatisfied with the denial of his merit increase, Heels sought union representation by MSEA. On February 25, 1983, MSEA sent Stevens written notice that Heels would appeal his performance evaluation and merit increase denial to the agency appeals board.

On June 9, 1983, Heels received a memo from Stevens, informing him that his reevaluation period had been extended to July 31, 1983. Stevens told Heels that his performance had not significantly improved during his first reevaluation period and that Heels would be dismissed if he failed to improve during the extension. A couple of weeks later Bolduc formally reprimanded Heels for calling in sick without arranging for someone to take his place at an important business meeting. Heels once again contacted MSEA, and on July 21, 1983, MSEA sent a letter to Stevens notifying him that Heels had filed a second grievance, this time appealing the reprimand.

On August 1, 1983, Heels received another memo from Stevens, informing him that the expected improvement in his performance had not been forthcoming. On August 16, 1983, a hearing was held before the agency appeals board on the matter of Heels' merit increase.[2] Ten days later, on August 26, 1983, Stevens demanded Heels' resignation. Heels said he would think it over during lunch. After lunch, Heels refused to resign, and Stevens fired him.[3]

## II.

In its "prohibited practices" complaint brought before the Board, MSEA asserted that, by firing Heels and taking the actions against him leading up to his termination,[4] the State had violated both subsections 1(A) and 1(B) of 26 M.R.S.A. § 979-C. Specifically, MSEA claimed that the State had taken that action because Heels had asserted, individually and through his union, rights guaranteed by SELRA. Therefore, MSEA argued, the State's action discouraged membership in the union by "discrimination in regard to ... tenure of employment," in violation of subsection 1(B), and "interfered with ... [Heels and other] employees in the exercise of the rights guar-

---

2. On September 14, 1983, the agency appeals board rendered a decision awarding Heels his 1983 merit increase on the ground that Bolduc and Stevens had failed to document Heels' alleged performance problems during the rating period.

3. On September 19, 1983, the Governor's Office of Employee Relations upheld Heels' discharge on the ground that he served "at the pleasure" of the director of the State Development Office under 5 M.R.S.A. § 7002(2)(A) (1979).

4. MSEA's complaint alleged a series of discriminatory actions against Heels culminating in his discharge. The Board considered all of those allegations in its findings of fact and conclusions of law. For convenience herein, we confine our discussion to Heels' discharge, since the same reasoning applies to uphold the Board's decision as to all of MSEA's allegations.

anteed in section 979–B" of SELRA, in violation of subsection 1(A).[5]

After hearing extensive testimony, the Board held that MSEA had failed to prove the claims asserted by its complaint. The Board found as a fact:

> The actions of the State [in regard to his employment] were not the result of Mr. Heels' exercise of any rights guaranteed under [SELRA]. Despite a chronological coincidence between Mr. Heels' actions and those of the State, there was no causal connection between the two.

On Rule 80C[6] review initiated by MSEA, the Superior Court concluded that the Board's factual finding of no causal connection was supported by sufficient evidence in the record, and that the Board had committed no error of law in holding that the State had not violated either subsection 1(A) or 1(B). We agree.

■ Critical to the Board's decision was its basic finding of fact that there was no causal connection between Heels' protected activity and any of the State's actions. As the moving party on its complaint before the Board, MSEA had the burden of proof on that initial fact question. The Board not only found that MSEA had not carried that burden, but made an affirmative determination that the State discharged Heels exclusively for reasons independent of and unrelated to his protected activity. On appeal that finding is unassailable unless clearly erroneous. 26 M.R.S.A. § 979–H(7) (Supp.1984–1985); *Sanford Highway Unit v. Town of Sanford*, 411 A.2d 1010, 1013–14 (Me.1980). The record evidence of deficiencies in Heels' job performance, backed up by the Board's assessment of the testimony of Heels' supervisors, Stevens and Bolduc, provides rational support for its critical finding of fact.

The Board analyzed this case as presenting "a classic 'dual motive' discipline situation," and it applied the *Wright Line* causation test developed by the National Labor Relations Board[7] for handling such cases under the federal counterpart to subsection 1(B).[8] *See NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (approving *Wright Line* test). Under the *Wright Line* test of causation, the moving party (here, MSEA) has the burden of proving by a preponderance of the evidence that the employee's protected activity was "*a* substantial or *a* motivating factor in the discharge."[9] *Id.* at 400, 103 S.Ct. at 2473 (emphasis added). In the event the moving party succeeds in proving the required de-

---

**5.** For the texts of 26 M.R.S.A. §§ 979–B, 979–C(1)(A) & (1)(B), see n. 1 above.

**6.** Although 26 M.R.S.A. § 979–H(7) (Supp.1984–1985), last amended by P.L.1975, ch. 564, § 36, still refers to M.R.Civ.P. 80B as governing the Superior Court review of Maine Labor Relations Board decisions, that Board is subject to the Maine Administrative Procedure Act, 5 M.R.S.A. § 8002(2) (Supp.1984–1985); and M.R.Civ.P. 80C, adopted effective February 15, 1983, by its express terms governs review of final agency action by any agency subject to that act. *See* M.R.Civ.P. 80C, Me.Rptr. 449–458 A.2d CVIII (1983); M.R.Civ.P. 80C advisory committee's note to 1983 amend., Me.Rptr., 459–466 A.2d XLVII.

**7.** *Wright Line*, 251 N.L.R.B. 1083 (1980), *enforced*, 662 F.2d 899 (1st Cir.1981), *cert. denied*, 455 U.S. 989, 102 S.Ct. 1612, 71 L.Ed.2d 848 (1982).

**8.** Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3) (1982).

**9.** In its decision the Board fell victim to the confusing language used by the N.L.R.B. in *Wright Line*, 251 N.L.R.B. at 1089, in speaking of the moving party's burden to make "a *prima facie* case" or "a *prima facie* showing." The United States Supreme Court in *N.L.R.B. v. Transportation Management Corp.*, 462 U.S. 393, 400, 103 S.Ct. 2469, 2473, 76 L.Ed.2d 667 (1983), in restating and approving the *Wright Line* test, makes clear that the federal law requires the General Counsel as the moving party to prove by a preponderance of the evidence that protected conduct is *a* motivating factor in the employer's decision to discharge an employee. Similarly, in Maine SELRA requires the complainant to prove prohibited practices by a preponderance of the evidence. 26 M.R.S.A. § 979–H(3) (Supp.1984–1985). In stating or applying the *Wright Line* test, the concept of *prima facie* case or showing, whatever that means in this context, introduces unnecessary confusion and is better avoided.

gree of causal connection between the employee's protected activity and his discharge, the *Wright Line* test still absolves an employer who can "prov[e] by a preponderance of the evidence that the discharge rested on the employee's unprotected conduct as well and that the employee would have lost his job in any event." *Id.* In other words, even if the moving party satisfies his initial burden of proof, the *Wright Line* test provides the employer with an affirmative defense upon its "proof that the discharge would have occurred in any event and for valid reasons...." *Id.* In the case at bar, however, the Board never got beyond MSEA's initial burden of proof under the *Wright Line* test. Accordingly, the Board found that it did not have a "dual motive" case before it after all. MSEA failed to prove any violation of subsection 1(B).[10]

▉▉▉ In its analysis of the subsection 1(A) prohibition, the Board used its own adaptation of the well-established federal rule applied to the counterpart federal statute:[11]

We long have recognized that the test of interference, restraint, and coercion under Section 8(a)(1) of the Act does not turn on [the employer's] motive, courtesy, or gentleness, or on whether the coercion succeeded or failed. The test is whether [the employer] has engaged in conduct which reasonably tends to interfere with the free exercise of employee rights under the Act.

*Hanes Hosiery, Inc.*, 219 N.L.R.B. 338, 338 (1975). *See also Presbyterian/St. Luke's Medical Center v. NLRB*, 723 F.2d 1468, 1472 (10th Cir.1983). Although the federal authorities are not controlling precedent, the Board justifiedly consulted them for their help in construing parallel statutory provisions. *See Baker Bus Service v. Keith*, 428 A.2d 55, 56 n. 3 (Me.1981). In view of the Board's basic finding that Heels' discharge occurred without any causal connection with his protected activity, the Board was justified in concluding that no employee who knew those facts reasonably would be interfered with, restrained, or coerced in asserting his protected rights. Objectively viewed, other employees with knowledge of the facts would see Heels' discharge as unrelated to the union and the rights guaranteed by SELRA. On this record, the Board would have had to engage in speculation and surmise to hold the State in violation of subsection 1(A) because of the possible side effects of the Heels incident on other employees.

The entry is:

Judgment affirmed.

All concurring.

---

**10.** Having failed to satisfy its burden under the *Wright Line* test, MSEA also failed to prove any "violations of [subsection 1(A)] turning on employer motivation." *Wright Line,* 251 N.L.R.B. at 1089. *See also NLRB v. Transportation Management Corp.,* 462 U.S. at 400, 103 S.Ct. at 2473 (*Wright Line* test applied to both sections 8(a)(1) and 8(a)(3) of National Labor Relations Act).

**11.** Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a)(1) (1973).