## CITY OF BANGOR

v.

## MAINE LABOR RELATIONS BOARD et al.

Supreme Judicial Court of Maine.

Argued Jan. 25, 1995.

Decided May 25, 1995.

---

Thomas C. Johnston, Michael A. Duddy (orally), Eaton, Peabody, Bradford & Veague, P.A., Bangor, for plaintiff.

Stephen Sunenblick (orally), Sunenblick, Reben, Benjamin & March, Portland, M. Wayne Jacobs (orally), Maine Labor Relations Board, Augusta, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

The Maine Labor Relations Board and the Bangor Firefighters Association appeal from a judgment entered in the Superior Court (Penobscot County, *Browne, A.R.J.*) vacating an order of the Board. The Board found that the City of Bangor engaged in a prohibited practice pursuant to 26 M.R.S.A. § 965 (1988) by failing to provide notice and an opportunity to bargain over the impact of a change in the composition of the group covered by the health insurance plan provided by the City to members of the Association. The Board ordered the City to reimburse association members for increased health insurance costs caused by the change. We vacate the judgment.

Between July 1, 1990, and June 30, 1993, the City and the Association were parties to the collective bargaining agreement at issue in this case. Pursuant to article 26 of the agreement, association members could choose to participate in a health maintenance organization (HMO) or to remain in the traditional Blue Cross/Blue Shield plan. The agreement froze the employees' contributions to the Blue Cross plan at the July 1, 1991, level. The City agreed to bear the burden of any increase in the Blue Cross rates. The City's contribution to the HMO plan, on the other hand, was capped at the amount con-

tributed by the City to the Blue Cross plan. The City gratuitously allowed city retirees to belong to the Blue Cross plan, although the retirees had to pay the full amount of the plan.

In February 1992, Blue Cross officials informed the City that the plan in which city retirees participated did not comply with new federal requirements governing insurance plans for persons eligible for Medicare. Blue Cross offered the City a number of options for complying with the new requirements. The option ultimately selected by the City included placing the retirees in a separate health plan, effective July 1, 1992.

As a result of the removal of the retirees from the Blue Cross plan, the cost of the plan decreased by 2%, a total of $73,000. The City shared that decrease in costs with the city employees who participated in the Blue Cross plan. The City reduced its proportionate contribution to the HMO plan, however, in accord with the cap contained in article 26 of the agreement. In September 1992, Blue Cross informed the City that the new federal rules did not require any change in the health plan covering city retirees after all. The City restored the retirees to their original Blue Cross plan, but Blue Cross did not restore the original rates for the remainder of the 1992 policy year.

The Association filed a grievance concerning the changes in the health plan. The Association argued that the agreement required the City to pass all of the cost savings to the firefighters. On December 22, 1992, the arbitrator denied the grievance. Although the language of the grievance did not specifically target the effect of the City's decision on the premiums paid by HMO subscribers, the parties argued that issue to the arbitrator and he addressed it in his decision. On December 23, 1992, the Association filed a prohibited practice complaint against the City. The complaint charged that the City's decision to remove the retirees from the insurance pool and the effect of that decision on the rates paid by HMO participants were unilateral changes to mandatory subjects of collective bargaining. According to the Association, the City's act constituted a refusal to bargain in good faith pursuant to 26 M.R.S.A. § 965(1)(c).

The City requested that the Board defer to the arbitrator's decision on the July grievance, but the prehearing officer denied that request. The matter proceeded to an evidentiary hearing before the Board. The Board found that the removal of the retirees from the health plan was not a mandatory subject of bargaining. It also found, however, that the City's action had an effect that the agreement did not allow on the cost of health insurance, a mandatory subject of collective bargaining. It ordered the City to reimburse association members who had paid more in HMO premiums as a result of the City's action.

The City filed a complaint for direct judicial review pursuant to 5 M.R.S.A. § 11008 (1989). It argued that the Board improperly failed to defer to the arbitrator's interpretation of the agreement and that the Board erred in concluding that the agreement did not allow the change in the City's contributions to the HMO. The court vacated the Board's order, concluding that the City was not required to bargain over the effects of its decision because the decision itself was not a mandatory subject of collective bargaining, and all three parties appeal. The Board and the Association attack the court's stated basis for its ruling. The City on cross-appeal presses those arguments that it made originally before the Board that the Superior Court failed to address.

 We review directly the decision of the Board. *City of Bangor v. Council 74, A.F.S.C.M.E.*, 449 A.2d 1129, 1133–34 (Me. 1982). We will reverse the agency decision only if the record demonstrates that the agency abused its discretion, committed an error of law, or made findings not supported by substantial evidence. *Hilly v. City of Portland*, 582 A.2d 1213, 1216 (Me.1990).

 It is well established that 26 M.R.S.A. § 965 requires public employers to bargain over the *impact* of even non-negotiable changes on mandatory subjects of collective bargaining. *See Superintending Sch. Comm. v. Bangor Educ. Ass'n*, 433 A.2d 383, 385 (Me.1981). In this case, the City's deci-

sion affected the amount paid by association members for health insurance, clearly a term or condition of employment subject to mandatory collective bargaining. *Easton Teachers Ass'n v. Easton Sch. Comm.*, No. 79–14, slip op. at 6 (M.L.R.B. Mar. 13, 1979). Therefore, if not authorized by the collective bargaining agreement, the change made by the City without proper notice and an opportunity to bargain constitutes an unlawful refusal to bargain.[1] 26 M.R.S.A. § 965.

■■■ The Board found that the agreement did not on its face permit the City unilaterally to manipulate its required HMO contribution by jettisoning the retirees from the traditional Blue Cross plan. The language of the agreement is certainly consistent with that interpretation. The Board therefore proceeded to determine the intent of the parties with respect to the cost-sharing provision. It found that the parties agreed to the cost-sharing arrangement on the assumption that insurance costs would only increase. That determination is a factual finding that we will not overturn unless it is clearly erroneous. *Maine State Employees Ass'n v. State Dev. Office*, 499 A.2d 165, 168 (Me.1985).

The Board heard evidence that the parties had contemplated only increases in insurance costs. In addition, the structure of the cost-sharing arrangement itself supports that conclusion. The agreement capped the City's contribution to the HMO plan at the level of its Blue Cross contribution, with the understanding that increases in the cost of that plan would fall on the employees. In return, the agreement capped the employees' contri-

butions to the Blue Cross plan, with the City bearing any increase in costs. Unilateral action by the City to reduce its Blue Cross contribution upset the symmetry of this contractual arrangement. The Board's conclusion that the parties did not bargain for an agreement that permitted the City unilaterally to effect a change in the cost-sharing arrangement is therefore supported by competent evidence in the record.

As the City points out, the arbitrator reached a different conclusion about the meaning of the collective bargaining agreement, specifically rejecting the arguments embraced by the Board. It argues that the Board should have deferred to the arbitrator's decision because the arbitrator's resolution of the contractual issue disposes of the statutory issue as well.[2]

■■■ The City first raised the deferral question before the prehearing officer, who is empowered by rule to "cause a record to be made of argument respecting any request for deferral" and to "grant or deny the deferral request." M.L.R.B. Rule 4.07(D). The prehearing officer denied the City's deferral request. Although Rule 4.07(D) provides a procedure for challenging the prehearing officer's deferral decision before the full Board, the City did not do so, revisiting the matter only before the court. The City has failed therefore to preserve its challenge to the deferral decision.

■■■ Moreover, even if we were to consider the City's deferral argument on the merits, the City acknowledges that the decision to defer is largely a matter within the discretion

1. The City contends that it did provide notice of the change. The Board concluded otherwise and its finding is supported by substantial evidence in the record.

2. The Board has partially incorporated into its deferral policy the standards set forth in a series of National Labor Relations Board decisions, beginning with *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1955). *See Council 74, A.F.S.C.M.E. v. City of Bangor*, No. 80–50, slip op. at 3 (M.L.R.B. Sept. 22, 1980). The basic *Spielberg* test calls for NLRB deferral to an arbitration award if (1) the arbitration proceedings were fair and regular; (2) all parties agreed to be bound; and (3) the arbitration decision is consistent with the policies embodied in the act. *Spielberg Mfg. Co.*, 112

N.L.R.B. at 1082. In addition, the Board has required identity of issue between the prohibited practice complaint and the grievance. In this case, the prohibited practice complaint required the Board ultimately to determine whether the impact of the City's action on the HMO subscribers was consistent with the agreement. The Association presented that question to the arbitrator and he considered it. The arbitrator expressly found that the effect on HMO participants of the City's action in removing the retirees from the health insurance pool was contemplated and approved by the agreement. It appears therefore that the contractual question at the heart of the prohibited practice complaint was presented to the arbitrator.

of the Board. The Board's deferral policy is designed to "give full effect to the parties' agreement to submit contract disputes to arbitration." *Maine State Emp. Ass'n v. State,* No. 86–09, slip op. at 5 (M.L.R.B. Apr. 23, 1986). For that reason, the Board has often deferred to a pending arbitration when, as in this case, "the bargaining agreements and their meaning are at the center of the dispute." *Id.,* slip op. at 6.

█ The Board nevertheless must balance that important policy goal against its statutory duty "to prevent any person, any public employer, any public employee, any public employee organization or any bargaining agent from engaging in ... prohibited acts." 26 M.R.S.A. § 968(5)(A) (1988). The Board's authority to prevent prohibited practices "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise." *Id.* The Board has stated that it does not defer indiscriminately to arbitration proceedings and that it frequently has declined to defer when it determines that deferral would not be consistent with its statutory mission. *Maine State Emp. Ass'n v. State,* No. 86–09, slip op. at 6. We cannot say that the Board exceeded its discretion in declining to defer to the arbitration decision in this case.

The entry is:

Judgment vacated.

Remanded for the entry of a judgment affirming the decision of the Maine Labor Relations Board dated August 9, 1993.

All concurring.