STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-01-63

DHM -KEN- 5/3

CITY OF AUGUSTA,

Plaintiff

v.

MAINE LABOR RELATIONS
BOARD, et al.,

Defendants

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

MAY 30 2002

This matter is before the court on a petition for M.R. Civ. P. 80C review by the City of Augusta challenging a decision of the Maine Labor Relations Board ordering the City's participation in collective bargaining negotiation. The City of Augusta requests a review, pursuant to rule and statute, of a recent Maine Labor Relations Board (MLRB) decision ordering the City to participate in collective bargaining with the Augusta Uniformed Firefighters Association (Union), the purpose of which is to negotiate the impact of changes in health insurance coverage.

In October of 1999, the City and the Union entered into an agreement changing the Union's health insurance carrier from Blue Cross/Blue Shield to Maine Municipal Employee Health Trust (MMEHT). The Platoon Chiefs, a separate bargaining unit, also changed to MMEHT and all parties signed 3-year contracts, effective Jan. 1, 2000. Several weeks after the agreement was ratified, MMEHT announced some changes to some of the health plan benefits including a cap on lifetime benefits, certain increases in deductibles and certain limitations on types of medical services.

An employee from each bargaining unit filed a grievance related to the changes in coverage and the grievances eventually ended up in arbitration. On March 28, 2000,

a Union representative presented a written request to the City Manager for negotiations over the impact of the change in health insurance carrier on the terms and conditions of employment. The City did not respond to this letter and the Union sent another letter on August 13, 2000, this time including a citation to 26 M.R.S.A. §§ 964 and 965 and warning that failure to reply would be treated as a violation of the statute. On September 11, 2000, the arbitrator issued a decision regarding the grievances that had been filed finding that the City had not violated the contract by failing to guarantee the exact coverage that had been proposed. On September 13, 2000, the City responded to the Union stating that the City declined to meet to negotiate because it had not made any decision that required impact bargaining.

Based on these facts, the MLRB found that the City had violated its statutory duty to meet within 10 days of receipt of a written notice from the other party requesting bargaining, see 26 M.R.S.A. § 964(1)(E), and ordered the City to cease and desist from refusing to bargain collectively.

An order of the MLRB should be vacated "only if the record demonstrates that the agency abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *City of Bangor v. M.L.R.B.*, 658 A.2d 669, 671 (Me. 1995). The construction placed on a statute by the MLRB, as the agency charged with its enforcement, should be accorded "considerable deference" by a reviewing court. *State v. MLRB*, 413 A.2d 510, 514 (Me. 1980).

The relevant statute reads:

> **1. Negotiations.** it shall be the obligation of the public employer and the bargaining agent to bargain collectively. "Collective bargaining" means, for the purposes of this chapter, their mutual obligation:
> * * * *

B. To meet within 10 days after receipt of written notice from the other party requesting a meeting for collective bargaining purposes, provided the parties have not otherwise agreed in a prior written contract;

26 M.R.S.A. § 965.

The City argues it should not be required to meet with the Union for two reasons. First it contends that all of its insurance obligations are covered by the contract, or if not expressly covered at least the details in question were "inseparably bound up with and thus plainly an aspect of the contract itself." *C&S Industries, Inc.*, 158 NLRB 454, 459 (1966). The MLRB held that the issues raised by the coverage changes were not contained in the agreements and the City was not in a position to argue whether or not the changes caused an impact because it has not met with the Union to educate itself on the potential impact. The MLRB relies on an earlier ruling in *East Millinocket Teacher's Assoc. v. East Millinocket School Committee*, No. 79-24 (1979) where it cautioned bargaining agents to meet even when there are doubts as to the sufficiency of the impact. "[W]e think it would be safer and wiser for a party to meet when requested even if it has doubts about the duty to meet. Since a misunderstanding of the law or of the facts of a clear request . . . will not excuse the duty to meet, a party should therefore not lightly undertake the decision to refuse to meet when requested by a 10-day letter." *Id.* at 10.

The City's second argument is based on the fact that a third party, MMEHT, made the decision to change the health insurance coverage and because the decision was not made unilaterally by the City, it has no obligation to meet. The MLRB pointed to several instances in its decision where forces outside the scope of the bargaining relationship have triggered the requirement to negotiate the impact, including changes

in laws, regulations and Supreme Court decisions. The MLRB also drew the distinction between negotiating the decision or the event and negotiating the impact of the event. The Law Court recognized this distinction in *City of Bangor v. AFSCME, Council 74*, 449 A.2d 1129 (Me. 1982) where it held that the parties were foreclosed from negotiating the actual discharge of employees, but not the impact of those discharges. *Id.* at 1134-1135.

Collective bargaining as defined by BLACK'S LAW DICTIONARY (7th ed.), quoting Benjamin J. Taylor and Fred Whitney, Labor Relations Law 3 (1971):

> . . . means the joint determination by employees and employers of the problems of the employment relationship. . . . The advent of collective bargaining does not give rise to these problems. Rather they are germane to the industrial relations environment, and exists with or without unionization.

The term "impact" as it would appear in the phrase "impact bargaining" would appear to take the definition of "the force exerted by the influence of new ideas." as a noun. OXFORD AMERICAN DICTIONARY, 1980. The court declines to accept the rationale of the City that because it is in possession of all the details of its employees necessary for determining the impact of a change in health insurance coverage as conclusive of the issue. The function of the statute is to cause the parties to communicate to determine whether there is an impact since the request by the bargaining unit for such a meeting would imply that the unit believes that an impact exists. Meeting for purposes of determining the existence, nature or extent of an impact does not invoke a requirement that the employer make a concession only that it recognize the allegation of a problem, i.e., an impact by the change, from whatever source.

It seems fairly clear from the statute and the MLRB precedent that the City is obligated to sit down with the Union and discuss the impact of the health insurance changes. Even if those discussions reveal a negligible or de minimis impact, as the

MLRB decision anticipates, the duty to negotiate in good faith places a mandate on the City that the MLRB decision seeks to enforce and that decision is based on reasonable and competent evidence.

For all the above reasons, the entry will be:

Decision of the Maine Labor Relations Board in the matter of Local 1650, IAFF, AFL-CIO-CLC v. City of Augusta, Maine Labor Relations Board case number 01-09 is AFFIRMED.

Dated: May___3___, 2002

Donald H. Marden
Justice, Superior Court

Date Filed __8/30/01__ ___Kennebec___ Docket No. __AP01-63__
                              County

Action __Petition for Review__
                    80C

# J. MARDEN

__City of Augusta__                          VS. __Maine Labor Relations Board, Local 1560 &__

| Plaintiff's Attorney | Defendant's Attorney    AFL-CIO-CLC |
|---|---|
| Stephen E.F. Langsdorf, Esq.<br>45 Memorial Circle<br>Augusta, Maine 04330<br><br>Stephen Sunenblick, Esq.<br>97 India Street<br>Portland, maine 04101 | Dyan M. Dyttmer, Esq.<br>Labor Relations Board<br>90 State House Station<br>Augusta, Maine 04333-0090 |

| Date of Entry | |
|---|---|
| 8/30/01 | Complaint for Review of Final Agency Action, filed. s/Langsdorf, Esq. |
| 9/4/01 | Record, filed. s/Dyttmer, Esq.<br>Letter entering appearance, filed. s/Dyttmer, Esq.<br>Certification, filed. s/Ayotte, Executive Dir. |
| 9/5/01 | Notice of briefing schedule mailed to attys of record. |
| 9/17/01 | Letter entering appearance, filed. s/Sunenblick, Esq. |
| 10/15/01 | Motion to Extend Time for Filing Brief, filed. s/Langsdorf, Esq.                    y<br>Proposed Order, filed. |
| 10/17/01 | ORDER ON MOTION TO EXTEND TIME, Atwood, J. (dated 10/15/01)<br>Time to file brief extended to November 9, 2001 is GRANTED.<br>Copies mailed to attys of record. |
| 11/9/01 | Plaintiff's Brief, filed. s/Langsdorf, Esq. |
| 12/6/01 | Respondent's Brief, filed. s/Sunenblick, Esq. |
| 12/12/01 | Brief of Respondent Maine Labor Relations Board, filed. s/Dyttmer, Esq<br>( Appendix attached) |
| 2/25/02 | Motion to Continue, filed. s/Langsdorf, Esq. |
| 3/4/02 | MOTION TO CONTIUE, Marden, J. (dated 3/1/02)<br>GRANTED.<br>Copies mailed to attys of record.<br>Notice of setting for __4/30/02__<br><br>sent to attorneys of record. |
| 4/25/02 | Letter from Atty. Dyttmer, filed. s/Dyttmer, Esq. |
| 4/30/02 | Hearing had on oral arguments with Hon. Justice Donald Marden, presiding.<br>Tape #603 Index 2431-3659<br>Stephen Langsdorf, Esq. and Stephen Suenblick, Esq. for the Plaintiff.<br>Dyan Dyttmer, Esq. for the Defendant. |