STATE OF MAINE
ANDROSCOGGIN, ss

RECEIVED & FILED

OCT 07 2009

ANDROSCOGGIN
SUPERIOR COURT

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-09-001
~TED~ AND~ 10/7/2009

CITY OF LEWISTON SCHOOL DEPARTMENT,

Plaintiff/Petitioner

v.

**DECISION AND JUDGMENT**
(M.R.Civ.P. 80C)

MAINE STATE EMPLOYEES ASSOCIATION,
SEIU, Local 1989, and THE MAINE LABOR
RELATIONS BOARD,

Defendants/Respondents

## I. BEFORE THE COURT

Before the court is a petition filed by the City of Lewiston School Department

(the Department) asking for review of a decision of the Maine Labor Relations Board

(MLRB) pursuant to M.R.Civ.P. 80C.

## II. BACKGROUND AND PROCEDURAL HISTORY

This appeal involves the collective bargaining principle that a public employer

fails to bargain in good faith if the employer unilaterally changes the terms and

conditions of employment, after a collective bargaining agreement has expired. In this

case, the Department contests the MLRB's determination that the Department violated

this principle when it changed the terms of its bargaining agreement with the Maine

State Employees Association, SEIU, Local 1989 (MSEA) after the agreement between the

parties had expired. The MSEA is the labor organization recognized and certified as the

bargaining agent for one unit of employees of the Department.

The Department and the MSEA were parties to the collective bargaining agreement effective July 1, 2005 through June 30, 2008 (Agreement). The Agreement set forth the percentages of the employees' health insurance to be paid by the employer and by the employee. The Agreement specifically provided:

> For the 2007-2008 school year, the Committee's contribution will be increased by a percentage equal to the annual MEA Anthem BC/BS Choice Plus plan premium rate increase, with a maximum cap not to exceed 13% more than the contribution for the 2006-2007 school year. Any increase above the Committee's capped contribution will be paid by the employee.

Pursuant to the Agreement, the Department and its employees shared responsibility for premium payments. On July 1, 2006, there was a 5% increase in the Anthem Blue Cross Blue Shield Plus Plan (Anthem) premium. During the 2006-2007 school year, the Department and the employees each paid 5% more than they had in the prior year, which covered the 5% overall premium increase. On July 1, 2007, there was an 8.66% increase in the Anthem premium. Accordingly, during the 2006-2007 school year, the Department and the employees each paid 8.66% more than they had the prior year.[1]

The Department and the MSEA began negotiating over a successor agreement in mid-June, 2008, and the Agreement expired before a new agreement was reached. On May 2, 2008, the Lewiston School Department Benefits Specialist, Jackie Little, sent an e-mail message to Union member Jacqueline Smith setting forth the respective contributions to health insurance premiums for employees as of July 1, 2008, if the new agreement was not settled by that date. On July 1, 2008, the Anthem premium increased by 4%. After June 30, 2008, the Department continued to contribute the same

---

[1] Each year of the Agreement the Department and the employees paid the same percentage of the premiums based on the employee's level of coverage. For example, under a single payer plan an employee paid 14.6% of the costs while the Department paid 85.4%. The dollar amount increased under this formula for both the Department and the employees based on the increase in premiums.

2

dollar amount to health insurance premiums that it contributed during the 2007-2008 school year. In other words, upon the expiration of the Agreement, the Department kept its own contribution to the premium at the same dollar level and increased the amount deducted from the paychecks of each unit employee to cover the full increase in the health insurance premiums imposed by Anthem.

On September 5, 2008, the MSEA filed a prohibited practice complaint with the MLRB, the agency that is authorized by statute (26 M.R.S. § 968) to adjudicate disputes in the field of labor relations. The complaint alleged that the Department unilaterally changed the status quo established by the Agreement in violation of 26 M.R.S. § 964(1)(A) and 964(1)(E).[2] Specifically the MSEA alleged that the Department failed to bargain in good faith when it unilaterally changed the percentage of the health insurance paid by the employer during bargaining. According to the MSEA, the Department's action interfered with, restrained or coerced employees in the exercise of their rights.

In its decision and order the MLRB agreed with the MSEA and found that the Department violated the Municipal Public Employees Labor Relations Law (MPELRL) by failing to bargain in good faith when it unilaterally changed a term of employment after the expiration of the Agreement. The School Department's decision to keep its own contribution to the health care premium at the same dollar level and increase the

---

[2] The relevant subsections provide the following:

> 1. PUBLIC EMPLOYER PROHIBITIONS. Public employers, their representatives and their agents are prohibited from:
> A. Interfering with, restraining or coercing employees in the exercise of the rights guaranteed in section 963; . . .
>
> * * *
>
> E. Refusing to bargain collectively with the bargaining agent of its employees as required by section 965; . . .

26 M.R.S. § 964(1)(A), (1)(E) (2008).

3

amount deducted from the employees' paychecks constituted a change in the status quo. Thus, the Department acted to make a unilateral change in a mandatory subject of bargaining that constituted a refusal to bargain in violation of 26 M.R.S. § 964(1)(E) and (1)(A). Accordingly, the MLRB determined that the Department was obligated to increase its contributions to health insurance premiums after the Agreement had expired.

The Department asserts that the terms of the Agreement expressly limit increases to the Department's contributions to health insurance premiums to the 2006-2007 and 2007-2008 school years. It is the Department's contention in this appeal that the MLRB acted beyond its statutory authority and in violation of the contractual rights of the Department in improperly construing the Agreement between the parties. The Department argues that it is the MLRB that acted improperly when it unilaterally obligated the Department to increase its contributions to health insurance premiums contrary to the terms of the expired Agreement.

## III. DISCUSSION

### A. Standard of Review.

The court may only reverse or modify an administrative agency's decision if it is based upon "bias or error of law," is "unsupported by substantial evidence on the whole record," is "arbitrary or capricious," or involves an "abuse of discretion" by the agency. 5 M.R.S. § 11007(4)(C)(4)-(6) (2008). The court cannot "substitute its judgment for that of the agency on questions of fact." 5 M.R.S. at § 11007(3). The focus on appeal is not whether the court would have reached the same conclusion as the agency, but whether the record contains competent and substantial evidence that supports the result reached by the agency. *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, 703

4

A.2d 1258, 1261. This court cannot "attempt to second guess the agency on matters falling within its realm of expertise," and judicial review is limited to the question of "whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). Where the question is one of statutory interpretation the court reviews for errors of law. *Botting v. Dep't of Behavioral & Developmental Servs.*, 2003 ME 152, ¶ 9, 838 A.2d 1168, 1171. The MLRB is granted considerable deference in construing public employment collective bargaining statutes because of its expertise in the area of labor relations. *Mountain Valley Educ. Ass'n v. Maine Sch. Admin. Dist. No. 43*, 655 A.2d 348, 354 (Me. 1995).

**B. Error of Law.**

The Department asserts it is unlawful for the MRLB, without any statutory authority, to impose an obligation for school districts to pay increased health insurance contributions that were never negotiated and never budgeted. The court must determine whether the MLRB erred in how it defined the status quo that must be maintained for health insurance premium costs when the Agreement expired and the parties were negotiating a successor agreement.

The MPELRL, 26 M.R.S.A. §§ 961-974, extends to all public employees the rights to organize and to bargain collectively. *Minot Sch. Comm. v. Minot Educ. Ass'n*, 1998 ME 211, ¶ 5, 717 A.2d 372, 375. Collective bargaining includes the parties' mutual obligations "to confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration," 26 M.R.S.A. § 965(1)(C), and "to participate in good faith in the mediation, fact-finding and arbitration procedures required by this section," 26 M.R.S.A. § 965(1)(E) (2008). The MPELRL empowers the MLRB to prevent "the prohibited acts enumerated in section 964," 26 M.R.S.A. § 968(5)(A), one of which is "refusing to bargain collectively," 26 M.R.S.A. § 964(1)(E).

5

The Law Court has recognized the "well-established rule of labor law that an employer may not unilaterally alter the terms and conditions of employment after the expiration of a collective bargaining agreement." *Lane v. Board of Directors of Maine School Administrative Dist.*, 447 A.2d 806, 810 (Me. 1982). This rule is based on the principle that unilateral alterations of the collective bargaining agreement are in contravention of the statutory duty to bargain in good faith. *Id.* Accordingly, when an employer initiates a unilateral change in violation of his statutory responsibilities, he commits an unfair labor practice. *Id.* The requirement to bargain and negotiate in good faith includes the obligation to maintain the status quo following the expiration of a contract. *Board of Trustees v. Associated Colt Staff*, 659 A.2d 842, 843 (Me. 1995).[3]

In the *Colt* decision, the Law Court addressed the definition of status quo at the expiration of a collective bargaining agreement. *Colt*, at 842. The University of Maine System (the University) and its bargaining agent, ACSUM, had a collective bargaining agreement that provided for across-the-board wage increases for employees for each year of the contract. *Colt*, at 844. When the agreement expired, the University adhered to the last wage schedule, and discontinued the annual step increases for employees, except as they applied to promotions. *Id.* The MLRB concluded that the failure of the University to adhere to the wage increase after the agreement expired constituted a unilateral change in the status quo prohibited under the law. *Id.* at 843-44. The Court found that "[t]o say that the status quo must be maintained during negotiations is one thing; to say that the status quo includes a change and means automatic increases in

---

[3] In cases involving allegations of unilateral changes after the expiration of an agreement, the MLRB looks to the terms of the expired agreement as evidence of the status quo that must be maintained. *See, e.g., MSEA v. School Committee of City of Lewiston*, No. 90-12 (Aug. 21, 1990) at 16. The established practices regarding the mandatory subjects of bargaining are also considered to determine the status quo between the parties. *See, e.g., Council #74, AFSCME v. School Admin. District #1*, No. 81-12, at 4 (March 11, 1981).

6

salary is another." *Id.* at 845 (quoting *Board of Coop. Educ. Servs. v. New York State Pub. Employment Relations Bd.*, 41 N.Y.2d 753, 363 N.E.2d 1174, 1177, 395 N.Y.S.2d 439 (N.Y. 1977)). The MLRB's "recently adopted dynamic status quo rule" improperly "obligated the University to pay substantial increases in wages not approved by its trustees, and dramatically altered the status and bargaining positions of the parties." *Id.* at 845. The rule changed, rather than maintained, the status quo. *Id.*

In the instant case, the respondents contend that maintaining the status quo required maintaining the percentage of the premium being paid by the employer and the employees at the expiration of the Agreement. In other words, in order to maintain the status quo, the Department and its employees were to continue to share the premium payments at the same proportions they shared them over the life of the Agreement. Conversely, the Department contends the status quo should be the dollar amount paid by the employer for health insurance premiums at the expiration of the Agreement. The Department claims the MLRB erred in applying a dynamic view of status quo in this case.

According to the terms of the Agreement the Department does not expressly agree to pay a percentage of the health care insurance premiums. At the same time, the Agreement does not provide that the Department would contribute a specific dollar amount toward the premium. In the Agreement, it is the employees' contribution that is expressed as a fixed dollar amount, not the employer's. Unlike *Colt*, this case does not involve the continuation of step increases in wages, which the Law Court determined would change the status quo. Instead, the Department's act to burden the employees with the entire increase in premiums when previously the costs had been shared changed the status quo. The Department and the employees had the same level of cost sharing for all three years the Agreement was in force. Both the Department's

7

share and each the employee's share increased at the same rate as Anthem's increase in the overall health insurance premium. The contract included a 13% cap on the amount of premium increase the employer would absorb, but the cap was never reached. The terms of the contract demonstrate that both parties anticipated increases in premiums and established a mechanism for sharing the burden of those increases, up to 13%.

When Anthem raised its premium rate by 4% in July 2008, both the Department and the employees would have had to pay 4% more than they had the prior year for health insurance under the terms of the Agreement. If the Department had continued to abide by the language in the Agreement both the Department and the employees would have had to shoulder a portion of the overall premium increase. Instead, the Department passed the burden of the entire increase onto the employees, so that employees saw an increase of 26-37%, depending on their level of coverage. Thus, the Department's refusal to pay part of the rate increase would have resulted in a sudden obligation for employees to pay drastically higher health insurance premiums. The MLRB did not err in considering the terms of the Agreement and the substantial impact of the change on the employees. The Board reasonably concluded that the Department's action was a significant unilateral change in a mandatory subject of bargaining.

**C. Mootness.**

The MSEA asserts that the parties have agreed to a new 2008-2011 collective bargaining agreement, which provides for retroactive compensation to employees who paid the disproportionate amount of health insurance premium during the period between contracts. Thus, the MSEA contends that because the Department is in the process of compensating employees for premium overpayments due to the disruption of the status quo, the issue is now moot.

8

Courts dismiss as moot questions whose resolution will have limited or no practical effect. *Bureau of Employee Relations v. Maine Labor Relations Bd.*, 655 A.2d 326 (Me. 1995).[4] Courts review for mootness by examining the record to determine whether there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources. *Id.*

The MSEA has not provided evidence of a new agreement and the Department has not stipulated to this factual assertion. Regardless of this issue, the appeal should be denied for the reasons stated above.

## IV. DECISION AND JUDGMENT

The clerk will make the following entry as the Decision and Judgment of the court:

- The judgment of the Maine Labor Relations Board is affirmed.

SO ORDERED.

Dated: October 6, 2009

Thomas E. Delahanty II
Justice, Maine Superior Court

---

[4] The Law Court has recognized three exceptions to the mootness doctrine:

> First, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief. Second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public. Third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting or determinate nature, may appropriately be decided.

*Id.* (citing *State v. Irish*, 551 A.2d 860, 862 (Me. 1988)).