1998 ME 211

**MINOT SCHOOL COMMITTEE**

v.

**MINOT EDUCATION ASSOCIATION and Maine Labor Relations Board.**

Supreme Judicial Court of Maine.

Argued June 11, 1998

Decided Aug. 14, 1998.

George S. Isaacson (orally), Daniel C. Stockford, Brann & Isaacson, Lewiston, for plaintiff.

Joyce A. Oreskovich (orally), Maine Labor Relations Board, Augusta, Shawn C. Keenan (orally), Maine Education Association, Augusta, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

RUDMAN, Justice.

[¶ 1] The Minot School Committee appeals from the judgment entered in the Superior Court (Kennebec County, *Alexander J.*) affirming the decision of the Maine Labor Relations Board in favor of the Minot Education Association on its prohibited practice complaint. The School Committee contends that the Board erred in determining that it had failed to bargain in good faith and, alternatively, that the Board exceeded its statutory authority to fashion remedies by vacating an arbitration panel's decision and by awarding the Association its arbitration costs. We affirm in part and vacate in part.

[¶ 2] The Minot Education Association is the certified bargaining agent for the teachers employed by the Minot School Committee, a public employer. The School Committee and the Association were parties to a collective bargaining agreement that expired on August 31, 1995. During negotiations for a successor agreement, the parties met regularly, employed fact-finding, and then jointly requested arbitration. On June 12, 1996, the Maine Board of Arbitration and Conciliation ("MBAC") conducted an arbitration hearing. On the same day, the Association initiated this action by filing a Prohibited Practice Complaint with the Maine Labor Relations Board, alleging, *inter alia*, that the School Committee had failed to negotiate in good faith.

[¶ 3] The MBAC's decision recommended that the parties adopt the School Committee's proposed salary scale.[1] On July 22, 1996, the School Committee proposed to the Association an agreement that fully incorporated both the mandatory findings and the non-binding recommendations of the MBAC. The Association rejected the salary scale included within that proposal and, on August 5, 1996, presented an alternative agreement. The School Committee rejected that proposal and, on August 6, 1996, notified the Association that the decision of the arbitration panel was its "last, best proposal." After the Association again rejected that proposal, the Committee decided unilaterally to implement the MBAC decision as of September 1, 1996.

[¶ 4] In response to the School Committee's unilateral implementation of the MBAC decision, the Association amended its prohibited practice complaint to allege that the School Committee had unilaterally altered the terms and conditions of employment in the absence of a bona fide impasse. The Board determined that the School Committee had not negotiated in good faith and that the School Committee's unilateral implementation of the MBAC decision was impermissible because the parties' impasse was not bona fide. The Board ordered, *inter alia*, "[t]hat the decision and award of the Board of Arbitration and Conciliation be vacated"; that the Committee "[c]ease and desist from refusing to bargain in good faith"; and that the Committee "reimburse the Association for all reasonable costs related to its participation in

---

1. Pursuant to the Municipal Public Employees Labor Relations Law, 26 M.R.S.A. §§ 961–974 (1988 & Supp.1997), parties engaged in collective bargaining

    may jointly agree to an arbitration procedure which will result in a binding determination of their controversy.... With respect to a controversy over salaries, pensions, and insurance, the arbitrators will recommend terms of settlement and may make findings of fact; such recommendations and findings will be advisory only ... with respect to a controversy over subjects other than salaries, pensions and insurance, the arbitrators shall make determinations with respect thereto ... and if made by the majority of the arbitrators, such determinations will be binding on both parties....

    26 M.R.S.A. § 965(4) (1988).

arbitration." The Superior Court affirmed the Board's decision. This appeal followed.

## II.

[¶ 5] The Municipal Public Employees Labor Relations Law ("MPELRL"), 26 M.R.S.A. §§ 961–974 (1988 & Supp.1997), extends to all public employees the rights to organize and to bargain collectively. *See Lewiston Firefighters Ass'n, Local 785, Int'l Ass'n of Firefighters, AFL–CIO v. City of Lewiston,* 354 A.2d 154, 157 (Me.1976). "Collective bargaining" includes the parties' mutual obligations "[t]o confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration," 26 M.R.S.A. § 965(1)(C) (1988), and "[t]o participate in good faith in the mediation, fact-finding and arbitration procedures required by this section," 26 M.R.S.A. § 965(1)(E) (1988). The MPELRL empowers the Maine Labor Relations Board to prevent "the prohibited acts enumerated in section 964," 26 M.R.S.A. § 968(5)(A) (1988), one of which is "[r]efusing to bargain collectively," 26 M.R.S.A. § 964(1)(E) (1988).

[¶ 6] The Board determined that the School Committee failed to bargain collectively with the Association, a determination that the School Committee contends is erroneous. We directly review the decision of the Board and will reverse "only if the record demonstrates that the agency abused its discretion, committed an error of law, or made findings not supported by substantial evidence." *City of Bangor v. Maine Labor Relations Bd.,* 658 A.2d 669, 671 (Me.1995). We accord the Board "considerable deference" in construing the MPELRL because the Board is charged with its enforcement. *Mountain Valley Educ. Ass'n v. Maine Sch. Admin. Dist. No. 43,* 655 A.2d 348, 351 (Me.1995). "The Board's findings on questions of fact are final unless clearly erroneous." *Id.* Pursuant to a clear error standard,

> [a]n appellate court can reverse a finding of fact only where (1) there is no competent evidence in the record to support it, or (2) it is based upon a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of

the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case.

*Harmon v. Emerson,* 425 A.2d 978, 982 (Me. 1981). "In applying this standard in an appellate proceeding, the factual findings ... are not to be altered or overturned ... simply because an alternative finding also finds support in the evidence." *Id.*

[¶ 7] The Board concluded that the School Committee did not bargain collectively with the Association because it violated section 965's requirement that it bargain in good faith. The Board premised this conclusion on its factual findings that the School Committee chose not to reach tentative agreements, failed to make compromises, and failed to explain its bargaining position. The record contains competent evidence to support each of these findings.

[¶ 8] Becky Gould, who became a School Committee negotiator in March of 1996, testified that she "had the authority to make tentative agreements with the association" but that no tentative agreements were reached while she was a negotiator. Karen Nichols, the chief negotiator for the Association, testified that only two tentative agreements were achieved during the entire negotiations process and that the Committee's negotiators otherwise never indicated that they could reach tentative agreements. She described the Committee's negotiators as "messengers" between the Association's negotiators and the Committee, a description credited by the Board, which determined that the Committee "went through the motions of sending two of its members [Buker and Gould] back and forth to meetings with the Association's negotiating team." We defer to the Board's opportunity to assess witness credibility. *See State v. Coombs,* 1998 ME 1, ¶ 7, 704 A.2d 387, 390; *see also State v. Webb,* 673 A.2d 1345, 1346 (Me.1996) (" 'It is for the fact finder to decide the credence to be given the various witnesses and their testimony.' ") (quoting *State v. Reardon,* 486 A.2d 112, 117 (Me.1984)). This testimony supports the Board's factual finding that "the

Committee's negotiating team did not have the authority to reach tentative agreements· or they chose not to exercise the authority they had."

[¶ 9] The record also contains competent evidence to support the Board's finding that the School Committee failed to bargain "in the traditional sense" by making compromises or by explaining its bargaining position. George Buker, a School Committee negotiator, testified that the School Committee's proposal as of June 5, 1996 was the same proposal that it had first presented on October 18, 1995. He explained that the School Committee had presented one different proposal in February of 1996 but the Association rejected it. After this rejection, the School Committee reverted to its October 1995 proposal. Superintendent Robert Wall testified that the February 1996 proposal included a provision that salary raises would be "retroactive to the seventh paycheck." Wall explained that "retroactive to the seventh paycheck" meant that the teachers would "be paid at the old scale up to the seventh payroll and then from the seventh on on the new scale . . ." because the budget did not contain enough money to cover the increased salary scale for the entire fiscal year. Nichols testified, however, that she understood "retroactive to the seventh paycheck" to mean that the new salary scale would take effect "seven paychecks from when we settled." Nichols explained that at the February 9, 1996 bargaining session, the School Committee indicated that the longer the teachers waited to settle, the fewer "retro checks" they would get. Nichols further explained that at the March 4, 1996 bargaining session, the School Committee reiterated its intention to reduce the "retro checks." This testimony supports the Board's factual finding that the Association's misunderstanding of the "retroactive to the seventh paycheck" proposal "was fortified by comments made by Committee members in February, and again in March, that the longer the Association waited to accept the offer, the less money they would have in-pocket."

[¶ 10] Evidence concerning the May 24, 1996 and June 5, 1996 bargaining sessions also supports the Board's finding that the School Committee failed to explain its bargaining position. Nichols described the parties' May 24 negotiating session as "the most productive meeting we had ever had." She described that both parties were talking numbers and that, at the end of the meeting, the teachers thought they had reached an agreement. The School Committee subsequently sent the Association a letter rejecting the May 24 proposal that explained only: "[t]he Minot School Committee agrees with many provisions submitted. However, there are aspects of the proposal that are not acceptable." Nichols testified that at the June 5 meeting, Buker and Gould declined to inform the Association which provisions of the May 24 proposal were objectionable to the School Committee.

[¶ 11] We conclude that the Board's findings that the School Committee failed to pursue tentative agreements, failed to make compromises, and failed to explain its bargaining position to the Association, all supported by competent evidence in the record, necessitate the legal conclusion that the School Committee failed to bargain collectively pursuant to 26 M.R.S.A. § 965. We acknowledge that the Board's factual findings also included an examination of the involvements of several School Committee members with a petition for a special town meeting to consider, *inter alia*, the rescission of an appropriation to the school budget. Although we agree with the School Committee's contentions that the First Amendment to the United States Constitution protects its members' rights to petition when they act in their personal capacities, and that the Board cannot consider such activity as evidence of the School Committee's good or bad faith during collective bargaining, we conclude that the Board's error was harmless.

[¶ 12] To determine whether an error is harmless, "the crucial question is not whether there is substantial evidence to support the judgment, but whether error affected the judgment." ROGER J. TRAYNOR, THE RIDDLE OF HARMLESS ERROR at 28 (1970). We have observed that "[o]nly when the agency is shown to have relied upon incompetent evidence to the prejudice of the complaining party can the admission of such

evidence require reversal of the agency decision." *In re Ryerson Hill Solid Waste Disposal Site–Paris Util. Dist., South Paris,* 379 A.2d 384, 391 (Me.1977). A careful reading of the Board's decision reveals that the Board did not rely upon the evidence of School Committee members' petitioning activity in determining that the School Committee had violated section 965. The Board's decision addressed the special meeting petition only after examining: School Committee negotiators' failure to exercise their authority to make tentative agreements; attempts by the Association to initiate bargaining and to make compromises; attempts by the Association to arrive at an agreement at the May 24 and June 5 bargaining sessions; the School Committee's failure to explain the "retroactive to the seventh payroll" salary proposal; and the School Committee's failure to explain its opposition to the Association's proposals. The Board concluded that "any one of these events" established a lack of good faith on the part of the School Committee. The Board then made the additional observation, not integral to its analysis, that these events "colored by the petition" demonstrated misconduct. In light of the Board's extensive factual findings and explicit determination that "any one of" the School Committee's enumerated acts *during negotiations* established a violation of its duty to bargain in good faith, we conclude that the Board's discussion of the special meeting petition, although improper, did not affect its conclusion that the School Committee violated its statutory duty to bargain in good faith. *See* 26 M.R.S.A. § 965.

## III.

▮▮ [¶ 13] We reject the School Committee's contention that its unilateral implementation of its last best offer did not violate the MPELRL. A "well established rule of labor law" is that an employer's unilateral alteration of the terms and conditions of employment after the expiration of a collective bargaining agreement constitutes a violation

of that employer's "statutory duty to bargain in good faith." *Lane v. Board of Dir. of Maine Sch. Admin. Dist. No. 8,* 447 A.2d 806, 809–10 (Me.1982). One exception to this rule is that an employer may "unilaterally implement its last best offer when negotiations have reached a bona fide impasse." *Mountain Valley,* 655 A.2d at 352. A bona fide impasse results when "the parties have *in good faith* exhausted the prospects of reaching an agreement...." *Id.* (emphasis added). "The determination of impasse is predominantly a question of fact and therefore will be upheld unless clearly erroneous and unsupported by substantial evidence on the record." *Id.* at 354.

▮▮ [¶ 14] The Board correctly concluded that the parties had not reached a bona fide impasse when the School Committee unilaterally implemented the MBAC decision. We reject the School Committee's contention that "[t]he parties clearly had reached a bona fide impasse after the completion of the three-step dispute resolution procedures, when the Association repeatedly and adamantly refused to accept the School Committee's offers to fully incorporate the arbitration panel's unanimous findings into a collective bargaining agreement." The exhaustion of impasse resolution procedures will not give rise to a bona fide impasse when a party's conduct throughout the negotiations process is motivated by bad faith.[2] The purpose of the MPELRL is "to promote the improvement of the relationship between public employers and their employees...." 26 M.R.S.A. § 961 (1988). To effectuate this intent, the Legislature requires parties "to bargain collectively" by, *inter alia,* "meet[ing] at reasonable times," "confer[ing] and negotiat[ing] in good faith with respect to wages, hours, working conditions and contract grievance arbitration," and "participat[ing] in good faith in the mediation, fact-finding and arbitration procedures required" by section 965. 26 M.R.S.A. § 965(1). These requirements involve the parties' conduct *during* negotiations. They do not narrowly focus on the reasonableness

---

2. We have noted with approval the Board's policy to reject a party's claim of bona fide impasse prior to the completion of impasse resolution procedures, "absent extraordinary circumstances." *Mountain Valley,* 655 A.2d at 352.

of a party's final offer. In this case, substantial evidence supports the Board's conclusion that the School Committee did not bargain in good faith. The School Committee cannot rely upon its ultimate willingness to adopt the arbitration panel's decision to cure its misconduct during negotiations. The Board correctly concluded that the School Committee's failure to bargain in good faith precluded the existence of a bona fide impasse.

## IV.

[¶ 15] The School Committee contends that the Board exceeded its remedial authority by ordering "[t]hat the decision and award of the Board of Arbitration and Conciliation be vacated...." We agree. Pursuant to section 972 of Title 26, "[e]ither party may seek a review by the Superior Court of a binding determination by an arbitration panel. *For interest arbitrations, the review must be sought in accordance with the Maine Rules of Civil Procedure, Rule 80B.*" 26 M.R.S.A. § 972 (1988 & Supp.1997) (emphasis added). This section explicitly provides that only the Superior Court, presiding in a Rule 80B appeal, may vacate an interest arbitration decision.

[¶ 16] We reject the Board's contention that it may vacate an arbitration decision pursuant to subsection 968(5)(A), which states that the Board's power to prevent prohibited acts "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law or otherwise." 26 M.R.S.A. § 968(5)(A) (1988). The effect of subsection 968(5)(A) is that an arbitration panel's decision on disputed terms and conditions of employment does not affect the Board's authority to require a party to cease and desist from committing a prohibited practice and "to take such affirmative action ... as will effectuate the policies" of the MPELRL. 26 M.R.S.A. § 968(5)(C) (1988). Subsection 968(5)(A)'s general grant of authority to the Board does not empower it to vacate an interest arbitration decision in contravention of section 972's allocation of review exclusively to the Superior Court.[3] *See Ziegler v. American Maize–Prod. Co.,* 658 A.2d 219, 222 (Me.1995) (construing specific statutory provisions as taking precedence over general provisions).

[¶ 17] "A properly designed remedial order seeks 'a restoration of the situation, as nearly as possible, to that which would have obtained' but for the unfair labor practice." *Caribou Sch. Dep't v. Caribou Teachers Ass'n,* 402 A.2d 1279, 1284 (Me. 1979). In this case, because the Board's failure to bargain in good faith rendered its unilateral implementation of the MBAC's decision impermissible, a proper remedy is the return of the parties to the bargaining table to negotiate in good faith the salary, pension, and insurance issues as to which the MBAC decision is not binding.

## V.

[¶ 18] Lastly, we agree with the School Committee's contention that the Board exceeded its statutory authority by ordering the School Committee to "reimburse the Association for all reasonable costs related to its participation in arbitration." Pursuant to subsection 965(6) of Title 26, "[t]he cost for services rendered and expenses incurred by the State Board of Arbi-

---

**3.** We further observe that the Legislature has limited the Superior Court's authority to vacate an arbitration decision. Pursuant to the Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–5949 (1980), the Superior Court may vacate an arbitration award only if:

[t]he award was procured by corruption, fraud or other undue means; ... [t]here was evident partiality by an arbitrator appointed as a neutral [arbitrator] or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; ... [t]he arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 5931, as to prejudice substantially the rights of a party; ... [t]here was no arbitration agreement and the issue was not adversely determined in proceedings under section 5928 and the party did not participate in the arbitration hearing without raising the objection; or ... [t]he award was not made within the time fixed therefor by the agreement or, if not so fixed, within such time as the court has ordered, and the party has not waived the objection.

14 M.R.S.A. § 5938.

tration and Conciliation ... must be shared equally by the parties to the proceedings...." 26 M.R.S.A. § 965(6) (Supp.1997). Statutory interpretation is a question of law that we review de novo. *See Estate of Spear,* 1997 ME 15, ¶ 1, 689 A.2d 590, 591. The plain language of subsection 965(6) requires the parties to an arbitration to share the costs of that arbitration equally. *See id.* at ¶ 2, 689 A.2d at 591–92 (according the words of a statute "their plain ordinary meaning" if that meaning is clear and the result is not "illogical or absurd"). We acknowledge that the Legislature has given the Board broad discretion to fashion remedies for prohibited practices, *see* 26 M.R.S.A. § 968(5)(C) (empowering the Board "to take such affirmative action ... as will effectuate the policies in this chapter"), but subsection 965(6)'s requirement that the parties to an arbitration equally bear the costs of that arbitration takes precedence over the general grant of remedial authority to the Board set forth in section 968(5)(C), *see Ziegler,* 658 A.2d at 222. We conclude that the Board exceeded its authority by ordering the School Committee to reimburse the Association for its arbitration costs.

The entry is:

Judgment modified to vacate the order of the Maine Labor Relations Board vacating the decision of the Maine Board of Arbitration and Conciliation and making the Minot School Board solely responsible for the arbitration costs; as modified, judgment affirmed.

DANA, Justice, with whom SAUFLEY, Justice, joins, dissenting.

[¶ 19] I do not agree that the Board's impermissible consideration of the School Committee members' constitutionally protected petitioning activity was harmless. I also believe that the Board's conclusion that the parties had not reached a bona fide impasse when the School Committee implemented its last best offer was based on an error of law. Because I would vacate the judgment in its entirety, I respectfully dissent.

[¶ 20] The Court acknowledges that the Board should not have considered the School Committee members' political conduct, which was undertaken in their personal capacities, but concludes that the error was harmless. I cannot agree. Although the Board, relying heavily on the testimony of the Association's chief negotiator, found that the School Committee failed to meaningfully participate in the bargaining process in several respects, all of its findings, in my opinion, were influenced by its disapproval of the actions of some of the Committee members in petitioning for a special town meeting to address, among other issues, the school appropriation. The Board, immediately after stating it would "examine the totality of the charged party's conduct to determine whether their actions during negotiations indicate a present intention to find a basis for agreement," made the following finding: "[T]his effort on the part of the members of the Minot School Committee to return funds which were earmarked to settle this contract was, at best, indicative of their state of mind throughout these negotiations and, at worst, a bold-faced attempt to avert an agreement." After addressing the facts of the May 24 and June 5 bargaining sessions, the Board went on to "find that any one of these events and, most certainly, that this course of conduct, *colored by the petition* and culminating in the refusal to bargain on June 5, constitutes bargaining in bad faith." (Emphasis added). Notwithstanding the Board's language that "any one of these events" constituted bad faith, the Board's ultimate finding was based explicitly on its examination of "the totality of the charged party's conduct," which it found was "colored by the petition." In my opinion, the Board's decision reveals that it evaluated the School Committee's bargaining conduct through the prism of its distaste for the School Committee members' political activity. Because each of the Board's findings that may have supported a determination of bad faith bargaining was "colored" by its impermissible consideration of the individual School Committee members' personal political conduct, I am compelled to conclude that the error was not harmless.

[¶ 21] In attempting to craft an appropriate remedy in this case, the Board also erred in its analysis of the impasse issue. In its

decision, the Board stated: "This bad faith bargaining forced the negotiations into arbitration when, in actuality, the parties had not reached a bona fide impasse."[4] Under Maine law, however, an impasse, whether or not bona fide, cannot occur, until *after* the statutory third-party intervention procedures are exhausted. *See Mountain Valley Educ. Ass'n v. Maine Sch. Admin. Dist. No. 43*, 655 A.2d 348, 352 (Me.1995). Although, as a practical matter, parties to a labor dispute will be stalemated on at least some issue prior to invoking arbitration, there is no requirement that they be at an "impasse" or be hopelessly deadlocked.

[¶ 22] In addition to making the irrelevant finding that the School Committee "forced" the negotiations into arbitration in the absence of a bona fide impasse, the Board went on to find that the parties were not at a bona fide impasse when the School Committee implemented its last best offer following arbitration. The Board made this finding despite its assertion that it was addressing only the Association's allegations that related to conduct prior to arbitration. Even assuming that the School Committee engaged in bad faith bargaining prior to participating in arbitration, the Board simply made no findings with regard to whether the parties were at a bona fide impasse *at the time the School Committee implemented its last best offer.*

> An impasse is that point in negotiations when the parties, in good faith, are entitled to conclude that further bargaining would be futile. The judgment of whether further negotiations would be futile must be viewed from the vantage point of the parties *at the time they believed an impasse was reached.*

*AMF Bowling Co. v. NLRB*, 63 F.3d 1293, 1301 (4th Cir.1995) (emphasis added) (citations omitted). Although a failure to negotiate in good faith at some point during the proceedings may be a relevant factor in determining whether the parties have reached a bona fide impasse, here the Board explicitly declined to consider the relationship be-

tween the parties at the time the School Committee implemented its last best offer, yet concluded that the "unilateral change in wages, absent bona fide impasse, violated the Act." Because the Board essentially adopted the unjustified per se rule that any bad faith during negotiations will preclude the existence of a subsequent bona fide impasse, its determination that the parties had not reached a bona fide impasse was based on an error of law.

[¶ 23] I would vacate the judgment of the Superior Court and direct the court to vacate the decision of the Board and remand the matter to the Board for a full and appropriate consideration of whether the School Committee engaged in prohibited labor practices and whether the parties were at a bona fide impasse when the School Committee unilaterally implemented the arbitration recommendations.

---

4. The extent to which the Board's distaste for those activities protected by the First Amendment tainted its findings is exemplified by the finding that the School Committee's conduct forced the parties into arbitration when, in fact, the parties jointly requested arbitration.