MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 29
Docket:      Ken-17-75
Argued:      October 11, 2017
Decided:     March 1, 2018

Panel:       SAUFLEY, C.J.,[*] and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.


SAD 3 EDUCATION ASSOCIATION

v.

RSU 3 BOARD OF DIRECTORS et al.


HUMPHREY, J.

[¶1]  School Administrative District 3 Education Association MEA/NEA (the Association) appeals from a judgment of the Superior Court (Kennebec County, *Murphy, J.*) on consolidated Rule 80C appeals from the decision of the Maine Labor Relations Board (MLRB) on the Association's prohibited practice complaint.[1]  The Association argues that the MLRB erred when it held that the 120-day notice provision in 26 M.R.S. § 965(1) (2017) applies to the request for impact bargaining in this case.  We disagree and affirm the judgment.

---

[*]  Although not available at oral argument, Chief Justice Saufley participated in the development of this opinion. *See* M.R. App. P. 12(a) (Tower 2016) ("A qualified justice may participate in a decision even though not present at oral argument."), *replaced with* M.R. App. P. 12(a)(2) (effective for appeals commenced on or after Sept. 1, 2017).

[1]  Both the MLRB and the Rural School Unit 3 Board of Directors are appellees in this matter.

# I. BACKGROUND

[¶2]  Regional School Unit 3 (RSU 3) is a rural school district serving towns that span a large geographic area in Waldo County.  The Board of Directors of RSU 3 (the School Board) is a public employer as defined in 26 M.R.S. § 962(7) (2017).  The Association is the recognized bargaining agent within the meaning of 26 M.R.S. § 962(2) (2017) for employees of the School Board, including classroom teachers.

[¶3]  At the beginning of the 2012-2013 school year, RSU 3 transitioned from a system of double bus runs to transport the students in the school district to a system of single bus runs.  This cost-saving measure resulted in students at the outlying elementary schools being dropped off at school earlier in the morning and picked up later in the afternoon than they had been under the prior system.  In order to accommodate this change, teachers at the outlying schools had to work longer hours than their colleagues at other schools in the district.  The School Board and the Association agreed to discuss the effects of the change after the system of single bus runs was implemented.

[¶4]  In early January 2013, the Association informed the School Board of its demand to enter into "impact bargaining"[2] regarding the change in working

---

[2] The Municipal Public Employees Labor Relations Law (MPELRL) requires that public employers and bargaining agents bargain collectively on certain mandatory subjects, including wages, hours,

conditions due to the transition to the system of single bus runs.[3]  The School Board and the Association engaged in impact bargaining over the change in working conditions for the affected teachers on three occasions in February, March, and April 2013.  During these bargaining sessions, the Association and the School Board discussed compensation for the affected teachers, but the School Board opposed that approach.[4]  By the end of the third meeting, the parties had yet to come to an agreement.

[¶5]  After the start of the new school year, the Association submitted a proposal to the School Board that included a request for $1,500 in

---

and working conditions.  26 M.R.S §§ 964-65 (2017).  Section 965(1) provides that parties participating in collective bargaining must meet at reasonable times and within ten days after receipt of a request for collective bargaining.  26 M.R.S. § 965(1).  We have recognized that the requirements for negotiations under section 965(1) apply not only to negotiations for contracts directly addressing wages, hours, and working conditions, but also to other decisions or events that are not by themselves subject to bargaining but would affect those mandatory subjects of bargaining.  *See City of Bangor v. AFSCME, Council 74*, 449 A.2d 1129, 1134-35 (Me. 1982).  This process is referred to as "impact bargaining" or "effects bargaining."  *See AFSCME Council 93 v. Penobscot Cty. Comm'rs*, No. 15-14 at 11 (Me. Labor Relations Bd. Jan. 5, 2016); *Mt. Abram Teachers Ass'n v. MSAD No. 58*, No. 15-09 at 23 (Me. Labor Relations Bd. July 29, 2015).

[3]  The MLRB made a finding that "[i]n the beginning of January of 2013, the Association informed the School Board of its demand to enter into impact bargaining regarding the change in working conditions due to the shift to the single bus run, which resulted in an increase to the teacher workday for teachers in certain schools in the district."  Representatives of the Association and of the School Board testified to the contents of this January 2013 letter from the Association, but it is not in the record.

[4]  The Association and the School Board also discussed other options to provide the affected teachers with relief, including assigning educational technicians to supervise the students, additional break time for the teachers during the lunch period, a change in the bus schedule, and a change in the central complex hours to increase professional development time for the affected teachers.

4

compensation for each of the affected teachers. The School Board rejected the Association's proposal, and the Association filed a request for mediation with the MLRB in December 2013.

[¶6] Before the mediation took place, the Association requested to collectively bargain a successor contract between it and the School Board because the parties' existing contract was set to expire in August 2014. During the negotiations for the successor contract, the parties agreed on uniform working hours for teachers throughout the district, taking into account the different schedules that resulted from the system of single bus runs. The successor contract, which covered the period from September 1, 2014, to August 31, 2017, was signed on April 1, 2014.

[¶7] The parties engaged in mediation sessions regarding the impact bargaining matter on April 8 and May 7, 2014, but failed to come to an agreement. On July 3, 2014, the Association filed a request for fact-finding with the MLRB and the School Board. The Executive Director of the MLRB requested that the parties select their representatives for a fact-finding panel, but only the Association responded to this request. In October 2014, the School Board communicated to the Association and the MLRB that it was unwilling to participate in fact-finding for the impact bargaining matter. In January 2015,

the Executive Director of the MLRB informed the parties that, in light of the School Board's October letter, he would not schedule a fact-finding proceeding.

[¶8]  Pursuant to the Municipal Public Employees Labor Relations Law (MPELRL), the Association filed a prohibited practice complaint with the MLRB against the School Board, *see* 26 M.R.S. § 968(5) (2017), alleging that the School Board violated 26 M.R.S. § 964(1)(E) (2017) and § 965(1) when it refused to participate in mediation and fact-finding procedures with respect to the effect of the new bus system.  In its answer, the School Board raised a number of defenses, including that the Association failed to provide the School Board with notice "at least 120 days before the conclusion of the current fiscal operating budget" that it intended to negotiate matters involving the appropriation of money during the impact bargaining sessions, as required by 26 M.R.S. § 965(1).

[¶9]  In its decision, the MLRB rejected all of the School Board's affirmative defenses except for the alleged violation of the 120-day notice provision.  The MLRB determined that the Association failed to comply with the 120-day requirement because aspects of the impact bargaining involved potential appropriations of money, and concluded that

> the School Board was not legally obligated to bargain over matters requiring the appropriation of money.  The failure of the

6

Association to provide the 120-day notice had no impact, however, on the School Board's legal obligation to continue bargaining over non-monetary issues. Consequently, to the extent that the School Board has refused to participate in fact finding over non-monetary issues, it has violated §965(1)(E).[5]

[¶10]  Both parties appealed to the Superior Court pursuant to M.R. Civ. P. 80C and 26 M.R.S. § 968(5)(F) (2017). The School Board challenged the MLRB's conclusion that it violated 26 M.R.S. § 964(1)(E) and § 965(1) by failing to participate in fact-finding concerning the impact of the new busing system. The Association challenged the MLRB's determination that it was required to provide a 120-day notice, arguing that the 120-day notice provision in section 965(1) does not apply to impact bargaining.

[¶11]  The Superior Court consolidated the appeals and affirmed the decision of the MLRB. The Association timely appealed to this Court the MLRB's determination that it was required to provide the 120-day notice.[6]  M.R. App. P. 2(b)(3) (Tower 2016);[7] M.R. Civ. P. 80C(n).

---

[5]  As a remedy for the School Board's having refused to participate in fact-finding over nonmonetary issues, the MLRB separately ordered that "[t]he Association will have 30 days from the date of this order to provide the School Board with a written request to initiate fact finding, should it choose to do so."

[6]  The School Board did not appeal the MLRB's determination that it had violated 26 M.R.S. § 964(1)(E) and § 965(1).

[7]  This appeal was commenced before September 1, 2017, and therefore the restyled Maine Rules of Appellate Procedure do not apply. *See* M.R. App. P. 1.

## II. DISCUSSION

[¶12] The focus of this appeal is whether the 120-day notice requirement in 26 M.R.S. § 965(1) applies to impact bargaining where the association's request requires additional appropriations by the municipality or county. If we conclude that the 120-day notice provision applies, we must then determine whether the MLRB erred in determining that the Association did not comply with that requirement.

[¶13] "In an appeal from a Superior Court judgment entered upon intermediate appellate review of a Board decision, we review the Board's decision directly for error of law, abuse of discretion, or clear error." *City of Augusta v. Me. Labor Relations Bd.*, 2013 ME 63, ¶ 14, 70 A.3d 268 (quotation marks omitted). "We accord the Board considerable deference in construing the MPELRL because the Board is charged with its enforcement." *Minot Sch. Comm. v. Minot Educ. Ass'n*, 1998 ME 211, ¶ 6, 717 A.2d 372 (quotation marks omitted).

[¶14] Statutory interpretation is a question of law that we review de novo. *Town of Eagle Lake v. Comm'r, Dep't of Educ.*, 2003 ME 37, ¶ 7, 818 A.2d 1034. In questions of statutory interpretation, "we first look to the plain language of the provisions to determine their meaning. If the language is

unambiguous, we interpret the provisions according to their unambiguous meaning unless the result is illogical or absurd. If the plain meaning of a statute is ambiguous—that is, susceptible of different meanings—we will then go on to consider the statute's meaning in light of its legislative history and other indicia of legislative intent." *Mainetoday Media, Inc. v. State*, 2013 ME 100, ¶ 6, 82 A.3d 104 (citations omitted) (quotation marks omitted). When a dispute involves a board or agency's interpretation of a statute it administers, "the agency's interpretation, although not conclusive, is entitled to great deference and will be upheld unless the statute plainly compels a contrary result." *Town of Eagle Lake*, 2003 ME 37, ¶ 8, 818 A.2d 1034 (quotation marks omitted).

A.    Interpretation of 26 M.R.S. § 965(1)

[¶15]  The Association argues that the MLRB's determination that the 120-day notice requirement applies to impact bargaining is contrary to the language of section 965(1), public policy, and long-established past practice and case law. In contrast, the School Board and the MLRB contend that the statutory language clearly and unambiguously requires that bargaining agents comply with the 120-day notice provision whenever appropriations of money are at issue, regardless of whether the parties are engaging in impact bargaining or other types of collective bargaining. We agree with the School

Board and the MLRB that the 120-day notice requirement applies whenever the parties engage in any type of collective bargaining, including impact bargaining, when the subject of the bargaining involves the appropriation of money by the municipality.

[¶16]  The first step in our analysis is to look at the plain language of the statute.

Section 965(1) states in whole:

**1. Negotiations.**  It is the obligation of the public employer and the bargaining agent to bargain collectively. "Collective bargaining" means, for the purposes of this chapter, their mutual obligation:

**A.** To meet at reasonable times;

**B.** To meet within 10 days after receipt of written notice from the other party requesting a meeting for collective bargaining purposes, as long as the parties have not otherwise agreed in a prior written contract. This obligation is suspended during the period between a referendum approving a new regional school unit and the operational date of the regional school unit, as long as the parties meet at reasonable times during that period;

**C.** To confer and negotiate in good faith with respect to wages, hours, working conditions and contract grievance arbitration, except that by such obligation neither party may be compelled to agree to a proposal or be required to make a concession and except that public employers of teachers shall meet and consult but not negotiate with respect to educational policies; for the purpose of this paragraph, educational policies may not include wages, hours, working conditions or contract grievance arbitration;

**D.** To execute in writing any agreements arrived at, the term of any such agreement to be subject to negotiation but may not exceed 3 years; and

**E.** To participate in good faith in the mediation, fact-finding and arbitration procedures required by this section.

*Whenever wages, rates of pay or any other matter requiring appropriation of money by any municipality or county are included as a matter of collective bargaining conducted pursuant to this chapter, it is the obligation of the bargaining agent to serve written notice of request for collective bargaining on the public employer at least 120 days before the conclusion of the current fiscal operating budget*, except that this requirement is waived in the event that a bargaining agent of a newly formed bargaining unit is recognized or certified during the period not more than 120 days nor less than 30 days prior to the end of the fiscal period. The 120-day notice requirement is also waived with respect to regional school units formed pursuant to Title 20-A, chapter 103-A, subchapter 2 prior to their first year of operation.

26 M.R.S. § 965(1) (emphasis added).

[¶17]  We have previously held that impact bargaining is governed by section 965(1)(A)-(E), acknowledging, in a case involving an alleged unlawful discharge of union employees, that "[t]he *effects* of a discharge have been held to be a subject of mandatory bargaining" even though the discharge itself would not be subject to collective bargaining under section 965(1).[8] *See City of Bangor*

---

[8]  The MLRB has also reached this same conclusion.  For example, the MLRB determined that, "[d]espite the fact that . . . the Employer was not obligated to negotiate the substance thereof, Section 965(1)(C) requires that, upon receipt of a timely request therefor, the Employer must negotiate over the *impact* of the implementation of such [policy] upon the mandatory subjects of bargaining."  *Saco*

*v. AFSCME, Council 74*, 449 A.2d 1129, 1134 (Me. 1982) (emphasis added) (quotation marks omitted); *see also City of Bangor v. Me. Labor Relations Bd.*, 658 A.2d 669, 671 (Me. 1995) ("It is well established that 26 M.R.S.A. § 965 requires public employers to bargain over the *impact* of even non-negotiable changes on mandatory subjects of collective bargaining.").

[¶18] Because the requirements in subsections (A) through (E) of 26 M.R.S. § 965(1) apply to impact bargaining, we conclude that the final paragraph of that section, which establishes the 120-day notice requirement, also applies to impact bargaining when the appropriation of money by the municipality or the county may be required. There is nothing in the statute's plain language that would exclude only the 120-day notice requirement of section 965(1) from being applied to impact bargaining when the impact bargaining may involve the appropriation of money.[9]

---

*Valley Teacher Ass'n v. Me. Sch. Admin. Dist #6*, Nos. 85-07 and 85-09 at 16 (Me. Labor Relations Bd. March 14, 1985) (emphasis added).

[9] The Association argues that the language of the 120-day notice provision—triggered only by matters "requiring appropriation of money by any *municipality* or *county*"—limits its application to collective bargaining and not impact bargaining. *See* 26 M.R.S. § 965(1) (emphasis added). According to the Association, the Legislature would have used the broader term "public employer" if it intended the provision to apply to impact bargaining matters, because most impact bargaining matters can be resolved by the public employer and the bargaining agent without requiring the appropriation of money by the municipality. This argument is unpersuasive. Issues subject to impact bargaining are no less likely to require appropriations of money by a municipality than are contract issues.

12

B.      Application of the 120-Day Notice Requirement to This Case

[¶19]  Having concluded that the 120-day notice requirement of section 965(1) applies to the impact bargaining in this case, we must decide whether the MLRB erred in determining that Association failed to comply with that requirement.

[¶20]  In its decision, the MLRB made a finding that the "Association did not provide the School Board with 120 days' notice, pursuant to Title 26, §965(1)."  The MLRB's "findings on questions of fact are final unless clearly erroneous."  *Minot Sch. Comm.*, 1998 ME 211, ¶ 6, 717 A.2d 372 (quotation marks omitted).  Pursuant to the clear error standard,

> [a]n appellate court can reverse a finding of fact only where (1) there is no competent evidence in the record to support it, or (2) it is based upon a clear misapprehension by the trial court of the meaning of the evidence, or (3) the force and effect of the evidence, taken as a total entity, rationally persuades to a certainty that the finding is so against the great preponderance of the believable evidence that it does not represent the truth and right of the case.

*Id.* (quotation marks omitted).

[¶21]  The parties agree that the Association provided the Board with a written request to impact bargain the new bus system in early January 2013.  Although the Association's request was in writing and timely, the MLRB found the notice to be deficient.  According to the MLRB, "it was not the timing that

was the problem, it was the fact that the January 2013 impact bargaining request did not satisfy the 120-day notice requirement because there was no reference to bargaining over matters requiring the appropriation of money."

[¶22] Whether the 120-day notice provision requires specific content is a question of statutory interpretation. We conclude that the language is not ambiguous in this regard. *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶¶ 19-21, 107 A.3d 621.

[¶23] "The purpose of the 120-day rule is to prevent the unbalancing of municipal budgets by increases in costs that were not foreseen and provided for at the time the tax rate was determined." *Council 74, AFSCME v. Inhabitants of the Town of Brunswick*, No. 85-08 at 5 (Me. Labor Relations Bd. Apr. 19, 1985); *see also Me. Teachers Ass'n v. Saco Sch. Comm.*, No. 84-10 at 3 (Me. Labor Relations Bd. Mar. 9, 1984) ("The obvious intent of [the 120-day notice] rule is to give public employers adequate notice that financial items will be brought to the bargaining table so that provision for these items can be made in the next fiscal operating budget."). Requiring that the written request to bargain be specific enough to provide notice that funds may need to be appropriated is consistent with the language and with the purpose of the 120-day notice provision. *See Dickau*, 2014 ME 158, ¶ 22, 107 A.3d 621 (explaining that, when

14

conducting a plain language analysis, we "examine the entirety of the statute, giving due weight to design, structure, and purpose as well as to aggregate language." (quotation marks omitted)).

[¶24] Because the statute unambiguously requires the bargaining unit—here, the Association—to serve written notice referencing its request to bargain over matters requiring the appropriation of money, the next question is whether the MLRB erred in finding that no such notice had been given. Even though the actual January 2013 letter is not in the record, there is evidence to support the MLRB's determination that the letter did not include reference to matters involving the appropriation of money. During the MLRB hearing, RSU 3's superintendent articulated her understanding of the 120-day notice requirement as "a notice signifying that the association is seeking to open the contract to talk about salary and benefits and those kinds of things" before she stated that the School Board did not receive a 120-day notice from the Association for the impact bargaining matter. The Association's representative also testified to the content of the January 2013 letter. When asked if it was the Association's "intention to ever ask for money for the teachers" in the impact bargaining sessions, the Association's representative responded in the negative. Representatives for both the Association and the School Board

explained that the Association's January 2013 letter pertained to the length of the teacher workday and that compensation was not raised until the two parties met in person to impact bargain.

[¶25]  Because there is competent evidence in the record that the Association did not properly notify the School Board *in writing* of its intention to bargain over matters requiring the appropriation of money, the MLRB did not commit clear error when it found that the Association did not provide adequate notice to satisfy 26 M.R.S. § 965(1).  *See Minot Sch. Comm.*, 1998 ME 211, ¶ 6, 717 A.2d 372.

The entry is:

Judgment affirmed.

Andrew T. Mason, Esq. (orally), Maine Education Association, Augusta, for appellant SAD 3 Education Association

S. Campbell Badger, Esq. (orally), and Laurel A.V. McClead, Esq., Drummond Woodsum & MacMahon, PA, Portland, for appellee RSU 3 Board of Directors

Lisa Copenhaver, Esq. (orally), Maine Labor Relations Board, Augusta, for appellee Maine Labor Relations Board

Kennebec Superior Court docket numbers AP-2016-9 and AP-2016-12
FOR CLERK REFERENCE ONLY