STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-19-03

ANTHONY GHIDONI,
    Petitioner

v.

**DECISION AND ORDER**
(M.R.Civ. P. 80C)

MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM,
    Respondent

Before the court is Petitioner Anthony Ghidoni's (Ghidoni) M.R.Civ. P. 80C Appeal of Final Agency Action against the Maine Public Employees Retirement System (the System). For the reasons explained below, the court finds that Ghidoni's appeal should be denied.

## BACKGROUND

Ghidoni, a System member, sought to purchase service credit for military service at a subsidized rate, pursuant to 5 M.R.S. § 17760(3)(A)(3). On July 14, 2017, the System's Executive Director's designee (EDD) found that Ghidoni was ineligible to purchase service credit at the subsidized rate because he was not awarded an Armed Forces Expeditionary Medal, or any other ribbon or medal, during his time in the military. (Record "R" 1.1). On August 1, 2017, Ghidoni appealed the EDD's decision to the Board of Trustees (Board). (R 2.1) As a result, an independent hearing officer was appointed, and both parties submitted briefs at the end of 2017. (R 11.1-12.1) On May 7, 2018, the hearing officer issued his Recommended Decision, concluding that the EDD was incorrect, that the decision

be overturned, and that Ghidoni be allowed to purchase service credit at the subsidized rate. (R 18.1-18.10)

A few days after the hearing officer's decision, the System's attorney requested the Attorney General's Office to review the Recommended Decision for error, pursuant to 5 M.R.S. § 17106-A. On August 8, 2018, the Attorney General's Office responded by letter, recommending that the hearing officer's Recommended Decision contained errors of law, and should be overturned. In particular, the Attorney General's letter noted that "the EDD's interpretation is the better of two imperfect interpretations and I find the Appellant has not shown by a preponderance that the EDD decision is unreasonable or made in error. Based upon my review as legal counsel to the Board, I will advise the Board that I believe there is a legal error in the final recommended decision." (R 23.3-23.4). On November 8, 2018, the parties made oral arguments to the Board, which issued a decision on November 14, upholding the EDD's decision and denying Ghidoni the ability to purchase service credit at the subsidized rate. Ghidoni then timely filed this Rule 80C appeal. Oral argument was held on September 4, 2019.

## STANDARD OF REVIEW

When an administrative agency's decision is appealed pursuant to M.R.Civ. P. 80C, this court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Servs.*, 664 A.2d 369, 370 (Me. 1995). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. The court will "not attempt to second-guess the agency on matters falling within its realm of expertise," meaning judicial review is

2

limited to "determining whether the agency's conclusions are unreasonable, unjust or unlawful in light of the record." *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me. 1991). "Inconsistent evidence will not render an agency decision unsupported," *Seider*, 2000 ME 206, ¶ 9, and the party seeking to overturn the agency's decision bears the burden of proof, and that party must prove that there is no competent evidence in the record to support the Board's decision. *Bischoff v. Bd. of Trs.*, 661 A.2d 167, 170 (Me. 1995).

When this court reviews an agency's interpretation of a statute that is both administered by the agency and within the agency's expertise, the first inquiry is whether the statute is ambiguous or unambiguous. *Competitive Energy Servs., LLC v. Pub. Utils. Comm'n*, 2003 ME 12, ¶ 15, 818 A.2d 1039. If the statue is unambiguous, it is interpreted according to its plain language. *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285. If, on the other hand, the statute is ambiguous, deference is given to the agency's interpretation if the interpretation is reasonable. *Id.*; *see also SAD 3 Educ. Ass'n v. RSU 3 Bd. of Dirs.*, 2018 ME 29, ¶ 14, 180 A.3d 125 ("When a dispute involves a board or agency's interpretation of a statute it administers, 'the agency's interpretation, although not conclusive, is entitled to great deference and will be upheld unless the statute plainly compels a contrary result.'") (citations omitted). Ultimately, the goal of statutory interpretation is to give effect to the Legislature's intent, *Manirakiza v. Dep't of Health & Hum. Servs.*, 2018 ME 10, ¶ 8, 177 A.3d 1264, but only if "the plain language of the statue is ambiguous will we look beyond that language to examine other indicia of legislative intent, such as legislative history," *Id.* (quoting *Scamman v. Shaw's Supermarkets, Inc.*, 2017 ME 41, ¶ 14, 157 A.3d 223); *see also L'Heureux v.*

3

*Michaud*, 2007 ME 149, ¶ 7, 938 A.2d 801 ("Statutory language is ambiguous if it is reasonably susceptible to multiple interpretations.").

## DISCUSSION

### 5 M.R.S. § 17760(3)(A)(3)

Title 5 M.R.S. § 17760(3)(A) provides:

**A.** A member may purchase service credit at the cost set forth in subsection 4 if the member has at least 15 years of creditable service at the time of retirement, the member makes payment as required under subsection 4 and the member:

> **(1)** Began membership prior to January 1, 1976;
> **(2)** Served in the United States Armed Forces during any federally recognized period of conflict; or
> **(3)** <u>Was awarded an Armed Forces Expeditionary Medal, a Combat Action Ribbon, a Combat Infantry Badge or any other campaign or expeditionary medal and the receipt of such a medal would allow the member to be considered "preference eligible" under 5 United States Code, Section 2108(3)(A) or 2108(3)(B).</u>
> (emphasis added).

The language underline above was added in 2004 and it is that language that is at the heart of this dispute.

Title 5 U.S.C. §§ 2108(3)(A) and (3)(B) state that "preference eligible" means a "veteran" as defined in sections 2108(1)(A) and 2108(1)(B) – (D), respectively. Section 2108(1), in turn, states:

**(1)** "veteran" means an individual who—

> **(A)** served on active duty in the armed forces during a war, in a campaign or expedition for which a campaign badge has been authorized, or during the period beginning April 28, 1952, and ending July 1, 1955;

**(B)** served on active duty as defined by section 101(21) of title 38 at any time in the armed forces for a period of more than 180 consecutive days any part of which occurred after January 31, 1955, and before the [sic] October 15, 1976, not including service under section 12103(d) of title 10 pursuant to an enlistment in the Army National Guard or the Air National Guard or as a Reserve for service in the Army Reserve, Navy Reserve, Air Force Reserve, Marine Corps Reserve, or Coast Guard Reserve;

**(C)** served on active duty as defined by section 101(21) of title 38 in the armed forces during the period beginning on August 2, 1990, and ending on January 2, 1992; or

**(D)** served on active duty as defined by section 101(21) of title 38 [38 USCS § 101(21)] at any time in the armed forces for a period of more than 180 consecutive days any part of which occurred during the period beginning on September 11, 2001, and ending on the date prescribed by Presidential proclamation or by law as the last date of Operation Iraqi Freedom;

and, except as provided under section 2108a [5 USCS § 2108a], who has been discharged or released from active duty in the armed forces under honorable conditions;

5 U.S.C. § 2108(1).

In challenging the Board's decision, Ghidoni maintains that it misinterpreted the statute as requiring the applicant to both have earned a campaign or expeditionary medal *and* be preference eligible under 5 U.S.C. § 2108(3)(A) or (3)(B).[1] Instead,

---

[1] Thus, the Board reads § 17760(3)(A)(3) as requiring that the member:

Was awarded an Armed Forces Expeditionary Medal, a Combat Action Ribbon, a Combat Infantry Badge or any other campaign or expeditionary medal

**and**

Ghidoni urges that the key conjunction is not "and," as the Board reads it, but instead "or." In other words, Ghidoni reads the statute as requiring a campaign or expeditionary medal only if the applicant is preference eligible under 2108(3)(A). Stated otherwise, Ghidoni contends that the medal requirement does not apply to applicants who are "preference eligible" under 2108(3)(B). Ghidoni supports this argument by correctly pointing out that earning a campaign or expeditionary medal is irrelevant in determining whether an applicant is "preference eligible" under sections 2108(1)(B) – (D), while it is relevant in the determination of preference eligibility under 2108(1)(A). That 5 M.R.S. § 17760(3)(A)(3) says "and the receipt of such a medal would allow the member to be considered 'preference eligible,'" arguably supports this reasoning. Since sections 2108(1)(B) – (D) of Title 5 of the United States Code do not mention any medals, there is no medal "the receipt of which" would allow the member to be considered preference eligible under those subsections.

The problem with Ghidoni's reading is that the statutory language and syntax do not support it. Because Ghidoni reads the "or" as being the key conjunction, his reading means that "or 2108(3)(B)" is the *entire clause* allowing him to purchase service credit at the subsidized rate.[2] Such a reading simply makes little sense since

---

the receipt of such a medal would allow the member to be considered "preference eligible" under 5 United States Code, Section 2108(3)(A) or 2108(3)(B)

[2] Ghidoni thus essentially reads § 17760(3)(A)(3) to require that the member:

Was awarded an Armed Forces Expeditionary Medal, a Combat Action Ribbon, a Combat Infantry Badge or any other campaign or expeditionary medal and the receipt of such a medal would allow the member to be considered "preference eligible" under 5 United States Code, Section 2108(3)(A)

**or**

2108(3)(B).

the language, "or 2108(3)(B)," cannot function as an independent clause. *See Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 226 S.W.3d 280, 284 n.3 (Tenn. 2007) ("An 'independent clause' is a group of words that contains a subject and verb and expresses a complete thought. An independent clause, therefore, can stand alone as a sentence."). Although Ghidoni's reading may be viewed as being more consistent with the references to sections 2108(3)(A) and 2108(3)(B) of federal law, it is also, in the court's view, a much more tortured interpretation than the one adopted by the Board.

The court, in dealing with what is an admittedly a confusing statute, is left in the position of deciding which of two imperfect interpretations is most consistent with the Legislature's purpose in enacting 5 M.R.S. § 17760(3)(A)(3). In view of the ambiguous nature of the statutory language, the court may turn to other indicia of legislative intent, including the legislative history of the enactment. *See Cnty. of Monmouth v. Wissell*, 342 A.2d 199, 204 (N.J. 1975) ("Where a choice must be made between two imperfect interpretations, the view should be selected which more likely accords with the probable legislative intent."). *See also Cobb v. Bd. Of Counseling Prof'ls Licensure*, 2006 ME 48, ¶ 11, 896 A.2d 271 (". . . the cardinal rule of statutory interpretation is to give effect to the intention of the Legislature.").

As noted above, the statutory language at issue here, 5 M.R.S. § 17760(3)(A)(3), was enacted in 2004. Prior to the change in the law, a member of the system who had served as a full-time active duty member of the armed forces, could purchase service credit at a subsidized rate if he or she "served in the armed forces during any federally recognized period of conflict," as defined in Title 37-B.

7

5 M.R.S. § 17760(2) (repealed).[3] The bill to change the law originated in the Second Regular Session of the 121st Maine Legislature as L.D. 1836, being "An Act To Amend the Laws Governing Purchase of Military Time Served under the Maine State Retirement System."

The bill was introduced and sponsored by Representative Guy Duprey of Medway on behalf of a constituent who had not served in a federally recognized period of conflict, as defined, but who had been awarded the Combat Action Ribbon and the Marine Corps Expeditionary Medal for his service in Beirut, Lebanon. As originally drafted, however, the bill would have provided for the purchase of service credit for a member who had served in a federally recognized period of conflict "who is certified to be a wartime veteran by the Department of Defense, Veterans and Emergency Management, Bureau of Veterans' Services, or who was awarded an Armed Forces Expeditionary Medal." (R. at 3.12). The bill's "Summary" explained that it was designed to clarify "that a member of the Maine State Retirement System who was awarded an Armed Forces Expeditionary Medal is entitled to purchase service credit . . . ."

In written testimony submitted to the Joint Standing Committee on Labor, a representative of the Retirement System pointed out that the bill, as drafted, would not accomplish the clarification suggested by the Summary because a member who had received the required medal would still have to show that he or she had served during a federally recognized period of conflict.

---

[3] As under current law, the member/veteran also had to have at least 15 years of creditable service, been discharged from the armed services under conditions other than dishonorable, and begun membership in the system prior to January 1, 1976.

The bill was later completely rewritten, with the result that 5 M.R.S. § 17760(3) was enacted to read as it presently does. The Summary to the Committee Amendment noted that the phrase "federally recognized period of conflict," was defined in the amendment, as opposed to referring to Title 37-B.[4] *See* 5 M.R.S. § 17760(3)(C). The Summary then states:

> The amendment also allows recipients of the Armed Forces Expeditionary Medal and several other campaign and expeditionary medals and awards to purchase service credit at a subsidized rate, but only if an appropriation is made to the retirement system to cover the subsidy.

Ghidoni has argued that the legislative history of section 17760(3)(A)(3) supports the conclusion that the Legislature intended to broaden the scope of those veterans who were to be eligible to purchase service credit at the subsidized rate. While this is true as a general observation, the Legislature was seeking to expand the class of those veterans who could purchase credits at a subsidized rate in a limited and targeted fashion, namely, for only those who had been awarded a medal and who were also "preference eligible" under federal law. There is simply no support in the legislative history that the Legislature intended that any veteran who was "preference eligible" under 5 U.S.C. §§ 2108(3)(A) or (3)(B) was also eligible to purchase service credits at the subsidized rate. Such a large expansion of those eligible to purchase at the subsidized rate is not consistent with the Legislature's concern that the retirement system could not afford such an expansion. Rather, the court is of the view that the Legislature sought to expand the class of eligible veterans

---

[4] The definition of "federally recognized period of conflict" in Title 37-B was repealed in 1999. Accordingly, the Committee Amendment to LD 1836 created a similar definition of that phrase but included it within the law pertaining to the purchase of service credits.

to only those who had been awarded the appropriate medal. Indeed, as far as the court can tell, the entire impetus for passing the bill that ultimately became section 17760(3)(A)(3) was to allow those soldiers who were awarded combat medals to benefit from the subsidized rates of purchase.

In light of the ambiguous nature of the language of 5 M.R.S. § 17760(3)(A)(3), the court reviews the agency's interpretation of the statute for reasonableness. *See Merrill v. Me. Pub. Emples. Ret. Sys.*, 2014 ME 100, ¶ 13, 98 A.3d 211. The court concludes that the Board's construction of § 17760(3)(A)(3) is reasonable and is consistent with the Legislature's purpose when it enacted that law.

5 M.R.S. § 17106-A

Ghidoni also claims that legal error was committed by the Attorney General's Office in its letter urging the Board to reconsider the Hearing Officer's Recommended Decision. Specifically, Ghidoni points to 5 M.R.S. § 17106-A, which provides in relevant part that "[t]he Board shall accept the recommended decision of the hearing officer unless the recommended decision is not supported by the record as a whole, the retirement system is advised by the Attorney General that the hearing officer has made an error of law or the decision exceeds the authority or jurisdiction conferred upon the hearing officer." 5 M.R.S. § 17106-A(1). Ghidoni argues that the Attorney General did nothing more than substitute in his own opinion, which he argues improperly overturned the hearing officer's lawfully rendered decision. Ghidoni points to specific passages in the Attorney General's letter, such as: "the EDD's interpretation is the better of two imperfect interpretations" and "I will advise the Board that I believe there is a legal error in the final recommended decision." (R 23.3). Ghidoni argues that these passages and others show that the Attorney General conceded that it was only his opinion that the EDD's interpretation

was better and that, as a result, the letter did not state that the hearing officer made an error of law. Such advice, Ghidoni argues, exceeded the Attorney General's statutory authority. The court disagrees.

The Attorney General's letter ends by noting that he would advise the Board that the hearing officer's Recommended Decision contained legal error. This is all that the statute requires; all it says is that "[t]he board shall accept the recommended decision of the hearing officer unless ... the retirement system is advised by the Attorney General that the hearing officer has made an error of law ...." 5 M.R.S. § 17106-A(1). The statute does not require the Attorney General to be *certain* that legal error was committed, nor does it prohibit the Attorney General from conceding that the statute in question is open to more than one interpretation. That the Attorney General stated that he "*believe[d]* there is a legal error" does not change the fact that "the retirement system [was] *advised* by the Attorney General" that legal error was committed.

## CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED and the decision of the State Public Employees Retirement System is AFFIRMED.

The Clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: October 16, 2019

William R. Stokes
Justice, Superior Court

11